UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CITY OF VANCOUVER, a Washington
municipal corporation,

    Plaintiff,

    v.

PHILIP N. HOGEN, in his official
capacity as Chairman of the National
Indian Gaming Commission; and the
NATIONAL INDIAN GAMING
COMMISSION,

    Defendants.

CASE NO. C08-5192BHS

ORDER GRANTING
DEFENDANTS' MOTION TO
DISMISS

This matter comes before the Court on Defendants' Motion to Dismiss (Dkt. 19). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL BACKGROUND

On March 28, 2008, Plaintiff City of Vancouver filed a complaint against Defendants Philip N. Hogen, in his official capacity as Chairman of the National Indian Gaming Commission, and the National Indian Gaming Commission. Dkt. 1. On April 3, 2008, Plaintiff filed an Amended Complaint. Dkt. 6 ("Complaint"). Plaintiff seeks declaratory and injunctive relief for alleged violations of the Administrative Procedure Act, 5 U.S.C. §§ 701- 706, and the Indian Gaming Regulatory Act ("Gaming Act"), 25 U.S.C. §§ 2701-2721.

ORDER - 1

On July 2, 2008, Defendants filed a Motion to Dismiss arguing that Plaintiff not only lacks standing to bring this action but also fails to state a claim upon which relief may be granted. Dkt. 19 at 1. On August 1, 2008, Plaintiff responded. Dkt. 29. On August 25, 2008, Defendants replied. Dkt. 30.

## II. STATUTORY BACKGROUND

In 1988, Congress enacted the Indian Gaming Regulatory Act "to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments" and "to provide a statutory basis for the regulation of gaming by an Indian tribe adequate to shield it from organized crime and other corrupting influences, to ensure that the Indian tribe is the primary beneficiary of the gaming operation, and to assure that gaming is conducted fairly and honestly by both the operator and players." 25 U.S.C. § 2702.

The Gaming Act applies only to federally-recognized tribes, *id.* § 2703(5), which may conduct gaming only on "Indian lands" within the tribes' jurisdiction. *See id.* § 2710. The term "Indian lands" is defined as follows:

> (A) all lands within the limits of any Indian reservation; and
> (B) any lands title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power.

*Id.* § 2703(4). The Indian Gaming Commission has clarified the term as follows:

> (a) Land within the limits of an Indian reservation; or
> (b) Land over which an Indian tribe exercises governmental power and that is either--
> (1) Held in trust by the United States for the benefit of any Indian tribe or individual; or
> (2) Held by an Indian tribe or individual subject to restriction by the United States against alienation.

25 C.F.R. § 502.12

The Act establishes three classes of gaming. Tribes have exclusive authority over Class I social and traditional games with prizes of minimal value. 25 U.S.C. §§ 2703(6), 2710(a)(1). Class II gaming, which includes bingo and certain "non-banking" card

games, *id.* § 2703(7), can occur if the state allows such gaming for other groups. *Id.* §§ 2703, 2710(b). The tribes and the Commission share regulatory duties over Class II gaming. *Id.* § 2710(b). Class III gaming, which includes more traditional "casino" games, including slot machines, roulette, poker, blackjack, etc., can occur lawfully only pursuant to a tribal-state compact. *Id.* §§ 2703(8), 2710(d).

Subject to certain criteria listed in the statute, "[t]he Chairman shall approve any tribal ordinance or resolution concerning the conduct, or regulation of class II gaming on the Indian lands within the tribe's jurisdiction . . . ." 25 U.S.C. § 2710(b)(2).

### III.  FACTUAL BACKGROUND

This dispute arises out of the Cowlitz Indian Tribe's attempt to construct and operate a gaming facility in Clark County Washington. The Cowlitz Tribe is a federally recognized Indian tribe. *See* Reconsidered Final Determination for Federal Acknowledgment of the Cowlitz Indian Tribe, 67 Fed. Reg. 607 (Jan. 4, 2002); Final Determination To Acknowledge the Cowlitz Indian Tribe, 65 Fed. Reg. 8436 (Feb. 18, 2000). Under Section 465 of the Indian Reorganization Act, 25 U.S.C. §§ 465-494a, federally recognized tribes may petition the Secretary of the Department of the Interior to have land "taken in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired."

**A.    The Property**

On March 12, 2004, the Cowlitz formally petitioned the Pacific Region of the Bureau of Indian Affairs at Interior requesting that the Secretary take into federal trust approximately 151.87 acres of land in Clark County, Washington (the "Property"). *See* Administrative Record ("AR") at 1643. The current owner of the Property is Salishan-Mohegan, LLC, a Washington limited liability company. *See* AR at 3675 (Clark County Title). The Department of the Interior stated that the Record of Decision on the proposed request will be issued on or after July 1, 2008. 73 Fed. Reg. 31143 (May 30, 2008). To date, that decision has not been issued.

**B.     The Class II Gaming Ordinance**

On August 22, 2005, the Cowlitz Tribe adopted Tribal Council Ordinance No. 05-2 ("Gaming Ordinance") for the purpose of governing "Class II gaming operations on the Tribe's Indian Lands." *See* AR at 1643. On August 29, 2005, the Cowlitz submitted a request to the Indian Gaming Commission for review and approval of the Gaming Ordinance and an opinion on whether, if acquired in trust by the United States, the Property would qualify as "Indian lands" under the Gaming Act. *Id*. at 1622. Plaintiff claims that "[a]n 'Indian lands' determination . . . is necessary prior to approval of any proposed gaming ordinance, because if gaming is proposed to occur on non-Indian lands, [Defendants] lack jurisdiction to approve the ordinance." Complaint, ¶ 58.

On November 23, 2005, the Indian Gaming Commission's Chairman, Mr. Hogan, issued a letter that approved the Gaming Ordinance. AR at 1622. The approval, however, was "expressly contingent" upon the Department of the Interior taking the Property into trust and the Cowlitz tribe exercising governmental power over the Property. *Id*.

On October 17, 2007, the Cowlitz tribe submitted a proposed amendment to the approved Gaming Ordinance. *Id.* at 770. Tribal Council Ordinance No. 07-30 revised Section 22 of the Gaming Ordinance, which was the Environmental and Public Health and Safety section. Complaint, ¶ 36. On November 26, 2008, Plaintiff submitted proposed comments to Defendants expressing how the City would be negatively impacted by the construction of the gaming facility. *See* AR at 701-18. Plaintiff claimed that it would be adversely impacted by "the effect of 97% of problem gamblers not seeking treatment and . . . increased crime, bankruptcy, divorce, domestic violence, and mental and physical health issues." *Id*. at 708. Moreover, Plaintiff claimed that the tribe failed "to account for the impact on the City of adding 4000 more direct construction workers and 3000 operational workers on low to moderate housing stocks which are already stressed." *Id*.

On January 8, 2008, Mr. Hogen issued a letter approving the Cowlitz tribe's proposed amendment. AR at 1-2.

## IV. DISCUSSION

Defendants move the Court to dismiss this action because (1) Plaintiff lacks standing to bring this action and (2) Plaintiff fails to state a claim upon which relief may be granted. Dkt. 19 at 9.

**A.  Standing**

Defendants claim that the Court lacks subject matter jurisdiction over this action because Plaintiff lacks standing to pursue its claims for violations of the Administrative Procedures Act and the Gaming Act. Dkt. 19 at 9.

Article III of the United States Constitution limits the jurisdiction of federal courts to cases and controversies. Under Article III, courts use the doctrine of standing "to identify those disputes which are appropriately resolved through the judicial process." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). To satisfy Article III standing, Plaintiff must demonstrate that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

**1.  Injury in Fact**

Plaintiff outlines its injury as follows:

> Because the [Commission] has already approved gaming on the Tribe's proposed casino site, *if* the site is taken into trust, gaming on the site *will inevitably* follow, making it *likely* that the City's interests will be harmed.

Dkt. 29 at 11 (emphasis added). Similar to games of chance, the probability that a hypothetical will actually occur is directly proportional to the number of conditions upon which it is based. In this case, Plaintiff's alleged adverse consequences resulting from the

1  construction of a casino ten miles from its city limits are neither actual nor imminent.

2  Realizing this weakness, Plaintiff concedes that its "claim is directed to an alleged

3  procedural violation." Dkt. 29 at 9.

4  When a plaintiff claims that it has suffered a "procedural injury," the plaintiff must

5  allege "that (1) the [agency] violated certain procedural rules; (2) these rules protect [a

6  plaintiff's] concrete interests; and (3) it is reasonably probable that the challenged action

7  will threaten their concrete interests." *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197

8  (9th Cir. 2004) (citing *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961,

9  969-70 (9th Cir. 2003)). Moreover, "for Article III purposes, [the court] may recognize a

10 'procedural injury' when a procedural requirement has not been met, so long as the

11 plaintiff also asserts a 'concrete interest' that is threatened by the failure to comply with

12 that requirement." *Id*.

13 "The Chairman shall approve any tribal ordinance or resolution concerning the

14 conduct, or regulation of class II gaming on the Indian lands within the tribe's jurisdiction

15 . . . ." 25 U.S.C. § 2710(b). Plaintiff claims that its "alleged procedural violation" is "the

16 [Commission's] decision to approve the Tribe's Amended Gaming Ordinance for class II

17 gaming on lands . . . despite the fact that the proposed casino site does not constitute

18 'Indian lands' for purposes of [the Gaming Act]." Dkt. 29 at 10. Defendants contend that

19 Plaintiff's "standing argument is premised upon the assumption that 25 U.S.C. § 2710

20 affords it a procedural right." Dkt. 30 at 2. Defendants argue that "there is no

21 requirement that the [Commission] determine that a gaming ordinance only apply to

22 currently existing Indian lands prior to deciding whether to approve a submitted

23 ordinance." *Id*. at 3. The Court agrees with Defendants as Plaintiff has failed to show

24 what provision of 25 U.S.C. § 2710 requires that, as Plaintiff concludes, "the

25 [Commission should] decide the 'Indian lands' question prior to acting on an ordinance."

26 In other words, Plaintiff has not shown that 25 U.S.C. § 2710(b) imposes a procedural

27 requirement on Defendants. *See, e.g., Citizens for Better Forestry*, 341 F.3d at 970-71

28

1 (National Environmental Policy Act affords public a right to comment and participate and
2 Endangered Species Act provides for procedural consultation in connection with agency
3 actions).

4 Therefore, Plaintiff has failed to show a sufficient injury in fact to satisfy Article
5 III standing.

### 2. Causation and Redressability

Assuming Plaintiff has alleged a procedural injury in fact, it "can establish standing without meeting all the normal standards for redressability and immediacy." *Hall v. Norton*, 266 F.3d 969, 975 (9th Cir. 2001) (internal quotations omitted). While Plaintiff may have problems showing that Defendants are the cause of its alleged injuries, the Court is not convinced that those injuries will be adequately redressed by a favorable decision in this lawsuit.

Plaintiff requests that the Court declare the permit invalid and issue an injunction preventing Defendants from proceeding with any further consideration of any gaming ordinance submitted by the Cowlitz. Complaint at 11-12. However, Defendants' approval of the Cowlitz's gaming ordinance is currently inoperative because the Cowlitz tribe does not own the tract of land on which gaming is proposed. Thus, Plaintiff has failed to show that a favorable decision will have any affect on the status quo. Moreover, Plaintiff has failed to explain how this Court's imposition of a procedural timing requirement will alleviate the substantive nature of its alleged injuries. In other words, whether Defendants issue their approval today, tomorrow, or on some unknown future date, Plaintiff will still face their alleged injuries. Even under relaxed standards, Plaintiff has failed to meet its burden on the third prong of the test for Article III standing.

### B. Prudential Standing

Once a plaintiff satisfies the constitutional Article III standing, the plaintiff must also show that it satisfies non-constitutional standing by demonstrating that it "has been granted a right to sue by the statute under which [it] brings suit." *City of Sausalito*, 386

F.3d at 1199. Plaintiff has failed to satisfy Article III standing and, therefore, the Court need not address the prudential standing inquiry.

**C.  Conclusion**

Plaintiff's alleged injury is hypothetical and cannot be redressed by a favorable decision in this lawsuit. Therefore, the Court is without jurisdiction to hear Plaintiff's claims because Plaintiff has failed to show that it has standing to bring this action.

## V. ORDER

Therefore, it is hereby

**ORDERED** that Defendants' Motion to Dismiss (Dkt. 19) is **GRANTED** and this case is **DISMISSED**.

DATED this 24th day of September, 2008.

BENJAMIN H. SETTLE
United States District Judge